(21 Misc. Rep. 383.)

## In re MacVICKER et al.

(Supreme Court, Special Term, Onondaga County. October, 1897.)

LIQUOR TAX LAW—RETROSPECTIVE EFFECT.

    Liquor Tax Law, subd. 8, § 17, as amended by Laws 1897, c. 312, providing that, whenever the consent of the owners of dwellings within 200 feet of the location of a saloon has been obtained and filed, no further consent for trafficking in liquor on such premises shall be required so long as they shall be continuously used for such traffic, is not retrospective so as to relieve one who had obtained such consent on an application filed before the passage of the amendment from obtaining such consent on a new application filed thereafter.

Application by MacVicker and others to revoke a liquor tax certificate issued to Clarence Riley. Granted.

Walter Ballou, for application.
C. S. Mereness, opposed.

HISCOCK, J. This is a proceeding to revoke and cancel a liquor tax certificate issued by the treasurer of Lewis county on or about May 15, 1897, to one Clarence Riley. The certificate was issued under subdivision 1, § 11, of the liquor tax law. The proceeding to cancel the certificate is pursuant to subdivision 2, § 28, of said law, and proceeds upon the theory that material representations contained in the application in respect to consents of owners of buildings occupied as dwellings within 200 feet of the location of the place where the traffic in liquor was to be carried on are false. In October, 1896, said Riley procured a liquor tax certificate to keep a saloon at the premises mentioned in the application for the present certificate, and carried on business thereunder until the one now in question was issued on or about May 15, 1897. At the time when he procured his first certificate there were four buildings, used exclusively as residences, within the prescribed limit of 200 feet from the nearest entrance to the building where he proposed to carry on his business, and Riley obtained the necessary consents. This number of buildings continued without change until just before the date when he made application for the last certificate. He was unable to obtain from the owners of these buildings the requisite number of consents for his second certificate, and thereupon five structures were drawn and placed upon a piece of land within the prescribed distance, from the owner or owners of which consents were obtained, and used upon the application for

the last certificate.    These structures were built somewhere else, and drawn upon the land in question.    They had no foundations, and were of a most temporary and unsubstantial character.    Riley in various ways, directly and indirectly, was a party to bringing and placing them upon the land, and filling them with occupants.    It is claimed by the applicants that they were not "buildings occupied exclusively for a dwelling," within the meaning of the statute, but that they were sham buildings, constructed and placed there for the purpose of pro-ducing necessary consents, and really to avoid the provisions of the statute.    Without, perhaps, admitting all that is claimed by the applicants upon this question, it still was not at all seriously claimed by counsel for Riley upon the argument that the consents from and in behalf of said buildings should be legally counted or considered for the purpose of sustaining the certificate.

The written application made by Riley for his certificate treated and represented these buildings as buildings occupied for dwellings within the meaning of the statute, and in accordance with the pro-visions of law he filed simultaneously with his application a consent covering them.    It is claimed by the applicants, and again (except for the reason hereinafter considered) not controverted by Riley, that the application and purported consents filed therewith constituted, under the various provisions of the liquor tax law, a false statement, for which the certificate may be, in these proceedings, canceled and revoked.    The reason above referred to, and now urged, why such law and penalty is not applicable to this case, is as follows:    Riley, as above stated, in 1896 obtained the necessary consents to have issued to him his first certificate, and it is to be assumed that those consents were in the ordinary legal form.    Intermediate that time and the date of his application for the second certificate, subdivision 8, § 17, of the liquor tax law, covering this subject, had been amended by add-ing the provision (Laws 1897, c. 312):

"Whenever the consent required by this section shall have been obtained and filed as herein provided, unless the same be given for a limited term, no further or other consent for trafficking in liquor on such premises shall be required so long as such premises shall be continuously occupied for such traffic."

It is urged that this provision just quoted exempted Riley from the necessity of obtaining any consents upon his last application, and that, therefore, although he did attempt to obtain them, and did base an application on them, still, if they were unnecessary, and he was en-titled to a certificate without them, he should not be charged with any offense in respect to them, or his certificate canceled, for the reasons hereinbefore set forth.    This contention seems to me to involve mainly the question whether the amendment above quoted was retro-active, and covered consents obtained before it was passed.    If it was, and did so do, then the defendant's argument would seem to be well founded, but I do not believe such to be the case.  While it rested entirely with the legislature to give or not to give the inhabitants of surrounding dwellings a voice in deciding whether a liquor tax certifi-cate should be issued, and while very likely the giving to them of such voice would not grant a vested right which could not be taken away

even by retroactive law, if the legislature saw fit, still, the legislature having included this feature in the general law, it should not be held to be taken away certainly by retrospective law unless such intention clearly appeared. Prior to the passage of this amendment, and at the time the first consents were obtained, there was nothing in the statute with reference to consents "for a limited term," or to indicate that a person giving a consent to the issuing of one certificate was to be bound thereby for all future time. It is true, as urged by the counsel for the defendant, that a law which compelled a person desiring to engage in this traffic, and having obtained his certificate, and having erected, perhaps, an expensive building, to take the risk of not being able to obtain consents for another certificate the succeeding year, might result in hardship. But this seems to have been the law when the defendant obtained his first certificate, and it would now be somewhat severe in the opposite direction to so bind by the provisions of a retroactive statute those persons who gave their consents for a short time as to make the latter permanent and continuing. The provisions of a statute are not to be treated as retrospective unless the intention to have them so is clearly indicated, and this applies as well to an amendment of as to an original statute. McMaster v. State, 103 N. Y. 547, 554, 9 N. E. 342; In re Miller's Estate, 110 N. Y. 216, 18 N. E. 139; Ely v. Holton, 15 N. Y. 595. The application, therefore, is granted.

Application granted.